STERN et al. v. JEROME H. REMICK & CO.

(Circuit Court, S. D. New York. January 14, 1910.)

1. COPYRIGHTS (§ 52*)—INFRINGEMENT—INTENT.
        Where defendant published a copyrighted song with knowledge of the copyright in fact, his intent was not material to his liability for infringement.
        [Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 50; Dec. Dig. § 52.*]

2. COPYRIGHTS (§ 29*)—NOTICE—DATE—PUBLICATION IN ROMAN NUMERALS.
        A copyright notice is not invalidated by the publication of the date of copyright in Roman instead of Arabic numerals.
        [Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 29, 30; Dec. Dig. § 29.*]

3. COPYRIGHTS (§ 31*)—PUBLICATION.
        The deposit of two copies of a copyrighted song in the Library of Congress, certainly when coupled with an unrestricted sale of a single copy, without any effort to push the work commercially, constituted a sufficient publication to sustain the copyright.
        [Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 31; Dec. Dig. § 31.*]

Action by Joseph W. Stern and another against Jerome H. Remick & Co. On motion for nonsuit at the close of plaintiffs' case. Denied. See, also, 164 Fed. 781.

This is a motion for a nonsuit, made at the close of the plaintiff's case, in an action brought to recover statutory penalties for the violation of the plaintiff's copyright. The defendant attacks the plaintiff's case on three grounds: First, because the plaintiff did not make publication of the work after filing two copies with the Librarian of Congress; second, because the notice of copyright stated the year in Roman numerals, not Arabic; and, third, because the defendant is not shown to have willfully intended to violate the copyright.

The composition in question was a song published by the plaintiff. The plaintiff had plates made, and caused ten copies of the song, without covers, to be struck off by hand, which he used for copyright purposes. Two of these copies were sent to the Librarian of Congress in accordance with the statute, and one of them was sent to C. H. Ditson & Co., a seller of musical works, with an invoice of sale, which was later paid by C. H. Ditson & Co. The whereabouts of the song after it reached the possession of C. H. Ditson & Co. does not appear. The plaintiff sold no other copies of the song until more than a year after he had taken out a copyright, and until after the defendant had begun to sell his copies. The price of the song was four cents a copy.

Cohen, Creevey & Richter, for plaintiffs.
House, Grossman & Vorhaus, for defendants.

HAND, District Judge (after stating the facts as above). As to the two second objections raised by the defendant I find no difficulty. It is not necessary that the defendant should have intended to violate the copyright of the plaintiff. He had means of knowledge from the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

copyright office that the song had been in fact copyrighted; and he, like any one else, took his chances when he published the song without any inquiry.

Nor do I find any difficulty in deciding that Roman numerals conform to the notice prescribed by the statute. Roman numerals are a part of the language of this country. They are constantly in use upon monumental architecture of all sorts and for serial purposes upon books, and they are a part of the language as taught in the public schools, and understood by all but the most illiterate. Nor can one seriously contend that the notice required by the statute could be fulfilled only by Arabic numerals. If the letters were written out in words, it would certainly be a compliance. I regard the writing of it here in Roman numerals as more nearly a literal compliance with the statute than to write out the year in words.

The only serious question is whether, under the statute, any publication is necessary beyond the deposit of two copies in the Library of Congress, and, if so, whether the sale to Ditson of a single copy is not enough. The defendant supposes that the author must make some "publication" independent of this deposit. He seems to mean by this a bona fide effort commercially to exploit his piece, to put it "on the market," to make what he can from its sale. This the plaintiff did not do. It is plain enough that his sale to Ditson was simply in an attempt to comply with a fancied requirement of the statute. I think the requirement was fancied, for nothing else is necessary than the deposit in the Library of Congress, certainly when coupled with an unrestricted sale of one copy.

The trouble seems to me to have arisen over a misconception of the decision of Mr. Justice Hunt in Boucicault v. Hart, Fed. Cas. No. 1,692. In that case the learned justice sitting at circuit held that the complainant had not complied with the statute by only filing his title, without ever filing two complete copies. The statute then read that the copies should be filed within 10 days after publication. Boucicault tried to keep his statutory monopoly without making public his play, and the court said in effect: "No; if you are to get the monopoly, you must give to the public your work within a reasonable time, so that they may get their consideration for the monopoly you claim. You may not file your title, and stop there indefinitely."

While the language of the opinion speaks of a publication as though it would be separate from the deposit of two copies, the point was not up whether the deposit would itself not have been a sufficient publication. It is true that there may be other kinds of publication than the deposit of these copies, because publication occurs as soon as the work is unrestrictedly made public in any way. But Mr. Justice Hunt by no means indicates that the deposit alone would not itself be an adequate publication, nor may the case be so understood. His opinion was wholly directed against the effort to keep the play secret and yet get a copyright.

In Jewelers' Mercantile Agency v. Jewelers' Publishing Company, 155 N. Y. 241, 49 N. E. 872, 41 L. R. A. 846, 63 Am. St. Rep. 666, four of the judges found a publication sufficient to destroy the com-

mon-law right, independently of the deposit, and the remaining three put their opinion upon the publication arising from the deposit. In Wright v. Eisle, 86 App. Div. 356, 83 N. Y. Supp. 887, the filing of an architect's plan was enough. In Ladd v. Oxnard (C. C.) 75 Fed. 703, Judge Putnam, while carefully avoiding a decision upon the point, does pretty clearly indicate on page 730 his opinion that the deposit is enough. I do not think Callaghan v. Myers, 128 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547, is in point upon the question.

Of the text-writers, Maggillivray (page 261) and Hamlin (page 78) understand that the deposit is enough. In so far as Drone (page 291) must be understood to the contrary, I cannot agree with him.

While I have found nothing precisely in point, Judge Townsend, in Werckmeister v. American Lithographic Company, 134 Fed. 321, 326, 69 C. C. A. 553, 558, 68 L. R. A. 591, laid down the following definition of publication:

"A general publication consists in such a disclosure, communication, circulation, exhibition, or distribution of the subject of copyright, tendered or given to one or more members of the general public, as implies an abandonment of the right of copyright or its dedication to the public."

On page 325 of 134 Fed., and page 557 of 69 C. C. A. (68 L. R. A. 591), the learned judge says:

"The unrestricted offer of even a single copy to the public implies the surrender of the common-law right."

Certainly, under this language, either the deposit, or the sale of the single copy to Ditson, was a publication. Even Drone (page 291) concedes that a sale is enough. I cannot find the least indication that there must be an effort to push the work commercially to the utmost, or that one sale is not enough to complete the copyright, if any sale at all be needed. There was clearly enough a sale to Ditson.

Motion denied.