## PATTERSON v. CENTURY PRODUCTIONS, Inc., et al.

### No. 57.

Circuit Court of Appeals, Second Circuit.

Dec. 6, 1937.

490

Krellberg & Fitzsimons, of New York City (Edward A. Sargoy and Alfred S. Krellberg, both of New York City, of counsel), for complainant-appellee.

Henry Pearlman, Maxwell E. Sparrow, and Percy Freeman, all of New York City (Henry Pearlman, of New York City, of counsel), for defendants-appellants.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff took about 15,000 feet of moving picture film showing wild animal scenes while on a hunting trip in Africa in 1927. He had the film developed and some 6,000 feet of it selected and arranged in eight reels, which together made up a motion picture that was given the title, "Shooting Big Game with a Camera."

On April 12, 1928, he filed his application for copyright registration under section 11 of the Copyright Act, as amended (17 U.S.C.A. § 11), and complied with its provisions relating to a work that is "a motion picture other than a photoplay." In due course, he received his certificate. Section 11, however, provides in part that "the privilege of registration of copyright secured hereunder shall not exempt the copyright proprietor from the deposit of copies, under sections 12 and 13 of this title, where the work is later reproduced in copies for sale." Failure to comply with this provision is urged as a defense to this suit.

The plaintiff had several copies made of the motion picture; some of the size suitable for use in projectors in theaters and others of the smaller size used in portable projectors. He showed the picture without charge to numerous employees of the National Cash Register Company and their families at Dayton, Ohio, and arranged with others, and more especially with the Motion Picture Bureau of the Y. M. C. A., to have it sent to many religious, educational, and social organizations to be shown upon the express restrictions that no charge should be made to the exhibitors except the actual cost of transportation and that no charge should be made by the exhibitors to those who should see the picture. In this way the moving picture was exhibited to many thousands of people. Sometimes all eight reels were shown at a time and sometimes less than all. Upon the first reel, and upon that only, appeared the notice, "Copyright 1928 by F. B. Patterson, Pres. of National Cash Register Co."

In some unauthorized way the defendant Cummins got hold of one of the positive copies of the negative film. It carried the above copyright notice which he disregarded, and, with the aid of defendant Empire Laboratories, Inc., had a duplicate negative made. From 1,000 to 1,500 feet of film made from this were used as part of a motion picture called "The Jungle Killer" which Cummins had copyrighted under section 9 of the Copyright Act (17 U.S. C.A. § 9) in the name of Century Productions, Inc., with August 15, 1932, as the date of publication. None of the appellants deny infringement provided the plaintiff's copyright had not become invalid before this suit was brought. But they do deny validity for reasons which will later appear and insist that after such disposition of the motion picture as the plaintiff had made no suit could be maintained for infringement without the deposit of two complete copies required by section 12 of the act (17 U.S. C.A. § 12), an admitted omission on the part of the plaintiff until after this suit was commenced. Section 12 provides that "no action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this title with respect to the deposit of copies and registration of such work shall have been complied with."

The requirement of section 11 in respect to the deposit of copies if the work be, as this work was, a motion picture other than a photoplay, is only that there be deposited in the copyright office, with claim of copyright, one copy "of a title and description, with not less than two prints taken from different sections of a complete motion picture, if the work be a motion picture other than a photoplay." Thus the Copyright Act of July 1, 1909 (17 U.S.C.A. §§ 1 and note 2 et seq.), departed from the previous limitation of a statutory copyright to published works in the manner provided by section 9. And by the amendment of August 24, 1912 such copyrights were made available for motion pictures. In Universal Film Mfg. Co. v. Copperman (C.C.A.) 218 F. 577, certiorari denied 235 U.S. 704, 35 S.Ct. 209, 59 L.Ed. 433, the validity of a copyright obtained in compliance with section 11 was upheld, though that suit for infringement failed on another ground. No publication was necessary other than the deposit required by the statute as a prerequisite to validity. Cardinal Film Corp. v. Beck et al. (D.C.) 248 F. 368. And, as the plaintiff did in the first instance comply with section 11, his copyright so obtained was valid for an unpublished motion picture not a photoplay provided the work was unpublished. So long as it remained unpublished, he was not required to do more to keep his copyright valid for the statutory period.

But, if a work so copyrighted is later published, continued validity and the right

to maintain a suit for infringement is dependent upon compliance with the statute and rules made under the authority of the statute applicable to the change in the status of the work which publication makes.

■ Section 11 requires an additional deposit of copies, "under sections 12 and 13 of this title," if, after a section 11 copyright, "the work is later reproduced in copies for sale." As this work was not reproduced in copies for sale before this suit was commenced, that provision of section 11 does not literally apply. However, the test of original validity of the plaintiff's copyright and, indeed, of its continued validity ,for the purposes of this suit rests upon whether or not what the plaintiff did in showing the picture amounted to publication. So it becomes necessary to determine whether the plaintiff's motion picture was published by such use as he made and permitted to be made of it. In deciding this question it becomes necessary to notice section 62 (17 U.S.C.A. § 62). It is there provided that "in the interpretation and construction of this Act [title] 'the date of publication' shall in the case of a work of which copies are reproduced for sale, or distribution be held to be the earliest date when copies of the first authorized edition were placed on sale, sold, or publicly distributed." This, however, as Judge Augustus N. Hand said in Cardinal Film Corp. v. Beck et al., supra, "was an enactment to fix the date from which the copyright term should begin to run, and not a general definition of what constituted publication."

Rules 19 and 23 of the Copyright Office must also be noticed. They were promulgated under section 53 of the act (17 U.S. C.A. § 53). Rule 19 defines unpublished works as " * * * such as have not at the time of registration been printed or reproduced in copies for sale or been publicly distributed. They include only the works enumerated in section 11." And rule 23 provides that: "Any work which has been registered under section 11, if published, i. e. reproduced in copies for sale or distribution, must be deposited for a second time (accompanied by an application for registration and the statutory fee) in the same manner as is required in the case of works published in the first place."

■ In so far as these rules undertake to define publication, they relate to what is to be deemed publication for the purposes of registration under the Copyright Act. The authority granted in section 53 is "to make rules and regulations for the registration of claims to copyright as provided by this Act [title]." There is no grant of power to define publication generally by rule. The statute not having done so, the rule which must be within the statute can be held valid only by construing it within the statutory bounds. In rule 19 the phrase is "reproduced in copies for sale or been publicly distributed," while in rule 23 it is "reproduced in copies for sale or distribution." The sale of copies of the work is a general publication. Stern v. Jerome H. Remick & Co. (C.C.) 175 F. 282. And, moreover, the reproduction in copies for sale is what the statute in section 11 treats as though a general publication. The distribution of copies referred to in the rules mentioned cannot enlarge the scope of the statute and must be held to be such a distribution of copies as gives to the distributees rights as to copying and use coextensive with those of a purchaser; that is, the distribution must be of a character that shows a dedication of the work to the public. In this respect what is a limited publication which falls short of dedication is not to be given the effect of general publication which does dedicate the work to the public. Werckmeister v. American Lithographic Co. (C.C.A.) 134 F. 321, 68 L.R.A. 591. Public exhibition is not necessarily a general publication merely because the public generally is shown the work. The test of general publication is whether the exhibition of the work to the public is under such conditions as to show dedication without reservation of rights or only the right to view or inspect it without more. American Tobacco Co. v. Werckmeister, 207 U.S. 284, 28 S.Ct. 72, 74, 52 L.Ed. 208, 12 Ann.Cas. 595. If the conditions of publication are such that the only right is to look at the copy of the work exhibited, there is no general publication which makes the work thereafter a published work in the copyright sense. McCarthy & Fischer v. White (D. C.) 259 F. 364. Even permission to take notes at the delivery of a lecture is not a general publication. Nutt v. National Institute (C.C.A.) 31 F.2d 236.

■ This motion picture was not distributed except for exhibition in the strictly limited noncommercial way above described. As the distribution was limited to exhibitions of the picture without charge, no one was given the right

to use the copies sent out for any other purpose whatsoever. The positive films were merely loaned for that purpose which did not permit copying. There was, therefore, no publication before the registration under section 11 or before this suit was brought. Consequently, the copyright was valid and infringed when this action was commenced.

It is urged that the failure to put the copyright notice on each reel of the film is fatal. In this connection the plaintiff insists that, as no notice whatever is required for a copyright under section 11, it is of no consequence whether it appeared upon only one reel and, indeed, whether there was any at all. The argument is that a copyright under section 9 is obtained by publication with notice, while that under section 11 obtained for an unpublished work by compliance with the special provisions pertaining to that requires no notice until copies are reproduced for sale and two complete copies must be deposited as for a published work. That is, that until publication of a nature that would dedicate the work to the public but for the copyright no notice is necessary. There is much force to this argument supported by the absence of express provisions for any notice in section 11, and by the fact that section 18 (17 U.S.C.A. § 18 and note), which deals with the forms a copyright notice may take, describes them as those "required by section 9 of this title."

■ But we need not here go to the extent of holding that a statutory copyright under section 11 does not require a notice. That point is reserved. It is enough for present purposes that the statute does not expressly require a notice upon each reel of a multiple reel motion picture. This picture was copyrighted as a whole under one title and the first reel did bear a sufficient notice. The division of the picture into reels was more or less arbitrary for convenience in handling, and, although there were subtitles and such incoherence that reels could be shown separately with reasonable satisfaction, we do not understand that the appellants suggest that any reel failed to show on its face the interdependence of all. We therefore think that, in the absence of express provisions to the contrary, the picture should be treated as one so far as notice is required making the one notice the picture bore as effective as though each reel had been separately so marked.

■ Some question is made concerning the effect upon the plaintiff's original copyright because, after this suit was brought, he did reproduce copies for sale and applied for registration again in such a way, so it is said, as to claim a new 28-year period. But we do not attempt to decide whether the claim is founded on fact or not. It deals with events subsequent to the accrual of this cause of action and subsequent to the commencement of this suit and joinder of issue herein. It is, therefore, immaterial.

■ Finally, it is said that under the Copyright Act the plaintiff secured no exclusive rights. In other words, his copyright, even if valid, amounted to nothing. This is thought to be so because it is said that none of the words used in section 1 (17 U.S.C.A. § 1) are applicable to a motion picture. The act when first passed did not, of course, use language peculiarly apt in application to motion pictures. They are comparatively new. It has, however, been amended at various times so that it is now clear that motion pictures are within its scope. The Constitution grants Congress the power to provide for copyrights, and as Justice Day said in American Tobacco Co. v. Werckmeister, supra: "Under this grant of authority a series of statutes have been passed, having for their object the protection of the property which the author has in the right to publish his production, the purpose of the statute being to protect this right in such manner that the author may have the benefit of this property for a limited term of years. These statutes should be given a fair and reasonable construction with a view to effecting such purpose." Section 1 of the act gives, inter alia, to the copyright owner the exclusive right to print, reprint, publish, copy, and vend the copyrighted work. In making a positive film from the plaintiff's negative and then negatives from the positive, the defendants who did it clearly copied the film. Besides that, when the film was shown the defendants who did that made an enlarged copy of the picture. It was to be sure temporary but still a copy while it lasted. I suppose a painting reproduced in colors that quickly faded to leave the canvas blank would, when the reproduction was complete, be a copy regardless of its life as such. White-Smith Music Pub. Co. v. Apollo Co., 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed. 655, 14 Ann.

Cas. 628, is not contrary in holding that written musical compositions are not copied in violation of a copyright by making mechanical rolls that are used in a machine to reproduce audibly the music that is written. The roll could not be read or played in the way the sheet music could be, and was only a part of a machine which in connection with it reproduced sound in a special way. The roll was not a duplication of the written musical composition itself. Here, however, the plaintiff's motion picture was reproduced in whole or in part in such a way that something just like it was made. That, we think, was copying in violation of the plaintiff's exclusive right. See, also, Metro-Goldwyn-Mayer Distr. Corp. v. Bijou Theatre Co. (D.C.) 3 F.Supp. 66.

Affirmed.