**ALLEN v. WALT DISNEY PRODUCTIONS, Limited, et al.**

District Court, S. D. New York.
June 27, 1941.

Julian T. Abeles, of New York City (Julian T. Abeles and Arnold J. Bernstein, both of New York City, of counsel), for complainant.

Gilbert & Gilbert, of New York City (Francis Gilbert, Godfrey Cohen, Franklin Waldheim, and William S. Savage, all of New York City, of counsel), for respondents.

CONGER, District Judge.

This is an action for infringement of a copyright. Two musical compositions are

involved in this controversy—complainant's number entitled "Old Eli March" (Yale University), and respondents' song "Some Day My Prince Will Come." The alleged infringing portion of the latter song involves the music of the chorus only.

The complainant was not the composer of "Old Eli". He is a publisher of college songs and music. "Old Eli" was written by Wadsworth Doster, during the year 1909, while he was a student at Yale University. Mr. Doster was not a professional musician, but he had studied music at Yale and it would appear from his testimony that he was interested in music, mainly as played on the piano. He testified that he played his composition while at Yale; that he frequently played it at Yale re-unions; that he played it at times in restaurants and in a few private homes; and that on several occasions it was broadcasted—once under a different title in connection with an international yacht race. Mr. Doster never copyrighted the song himself, but assigned all his right, title and interest in it, including the right to copyright the same, to the complainant herein.

Thereafter complainant included "Old Eli" in a volume of musical compositions entitled "Intercollegiate Song Book, Eastern Edition", which was published and put out to the public for sale on or about October 6, 1936; the copyright registration thereof was September 26, 1936.

The song "Some Day My Prince Will Come" was written by Frank Churchill, on or about November, 1934, in connection with the movie production "Snow White and the Seven Dwarfs". Mr. Churchill had been for nine years in the employ of Walt Disney Productions, Ltd., the producer of said motion picture. Mr. Churchill was a professional musician. His occupation, as he stated, was that of a writer of musical scores for motion pictures. The copyright on his song was obtained on January 25, 1935, as an unpublished work, and requests for copyrights as a published work were made on December 14, 1937. "Some Day My Prince Will Come" was published when the motion picture "Snow White" was first shown, which was around Christmas, 1937. This motion picture was an innovation and a tremendous success. The song "Some Day My Prince Will Come" was one of its most tuneful numbers. Some time later this song was published separately and apart from the motion picture with some changes in the words.

RKO Radio Pictures, Inc., is joined as a respondent herein because the movie "Snow White and the Seven Dwarfs", containing the alleged infringing musical composition, was released by it.

Irving Berlin, Inc., is joined as a respondent because it subsequently published, as a separate song, the alleged infringing composition.

■ Before I take up the question of plagiarism, I shall dispose of several other issues raised by the respondents. It is respondents' contention that complainant can not sustain the copyright claimed herein, because the complainant registered his copyright in the name of "The Thornton Allen Company", and that as an individual he was not entitled to use that name without filing a certificate as prescribed by Section 440 of the Penal Law of the State of New York, Consol.Laws, c. 40. It is respondents' contention that no such certificate has been filed, although it does appear that such a certificate was filed under the name of T. W. Allen Company.

I find against the respondents on this point. The difference between the name set forth in the certificate and the name on the copyright is at most a slight variance and is not material. The name on the copyright notice gives sufficient notice to the public of the name of the owner of the composition upon which copyright is claimed, and the date when this right was obtained. That is all that the statute requires. Fleisher Studios, Inc. v. Ralph A. Freundlich, Inc., 2 Cir., 73 F.2d 276; Burrow-Giles Lithographic Company v. Sarony, 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349.

■ Respondents further contend that complainant's composition was not protected by copyright because it had been published without a claim of copyright prior to its first publication with a claim of copyright. The testimony is that Mr. Doster, on various occasions, had given or loaned a manuscript copy of "Old Eli" to piano players in places of amusement for them to play; that on a few occasions he had also loaned the manuscript to orchestra leaders for them to play; that Mr. Allen had tried to interest several orchestra leaders in "Old Eli"; that he had sent a copy of the manuscript in 1932 to Disney; and that he had also left a copy of the manuscript with the Fleisher

Company with the hope of interesting them.

The composition was not printed until 1936. No copies were ever sold. At the most there were, until 1936, only a very few manuscript copies in existence.

What Doster and Allen did, before 1936, in my opinion, did not constitute publication as defined by the statute and the decisions. Giving the composition to a few musicians and leaders of orchestras to play does not constitute publication. McCarthy & Fischer, Inc., v. White et al., D.C., 259 F. 364. There was no general offer or dedication to the public. The sending of the manuscript copy to Disney and to Fleisher in no way was a publication. Had either firm used the composition, or made use of it in any public way, then there would no doubt have been a publication.

█ The next point to take up is that of direct access or copying. This point divides itself into two branches: (1) Whether Churchill ever heard "Old Eli" played or broadcasted, and (2) whether he ever saw the manuscript copy which the complainant insists he mailed to Disney at Hollywood, California, in 1932.

(1) In connection with this, it should be borne in mind that from 1909 until 1936 complainant's song had no great vogue. It had never been printed; there were only a very few manuscript copies in existence. Doster himself had played it, as I have heretofore indicated. It had been played over the radio on at least two occasions. It had never been featured, and was little known. As an example of this, the testimony of Mr. Bartholomew is enlightening. Mr. Bartholomew had graduated from Yale in 1907 and had been prominently connected with Yale University for many years in the field of music. Yet he testified that he had never heard "Old Eli" until this litigation started.

Churchill testified that he had no recollection of ever having heard "Old Eli". I am inclined to accept his statement as true. At least there has been no such showing which would lead to the inference or conclusion that he must have heard it. Were I to find from the testimony that Churchill, between the years 1909 and 1934, had heard "Old Eli" played, then I would be guessing or surmising.

(2) Mr. Allen testified that on or about November 25, 1932, he mailed a package of music to the Disney Studio in Hollywood, and that in this package was included a manuscript copy of "Old Eli". He testified that the package of music followed a letter he wrote to the Disney Studio concerning the shipment. Mr. Allen relied entirely on his recollection as to the mailing of the music, and particularly as to the inclusion of the copy of "Old Eli." It may be that he did send this copy to Disney when he says he did. On the other hand, Mr. Allen had no record of any kind, either to refresh his recollection or to substantiate his statement. He did have from the Disney Studio an acknowledgement of his letter of November 26, 1932. Mr. Allen was unable to produce a copy of his letter, but the respondents eventually produced the original from the Hollywood office of the Disney Studio, and it there appeared that the letter was directed to the Disney New York office, and not to the Hollywood office. It further appeared that there was enclosed in the letter a list of musical compositions which Mr. Allen was sending to Disney. The composition "Old Eli" was not specifically mentioned, but Mr. Allen claimed it was among those designated at the end of the list as "etc., etc." After all, the proof on this point is supported only by Mr. Allen's recollection after these many years.

Taking for granted, however, that he did send this copy of "Old Eli" to Disney in 1932, there is no proof that Mr. Churchill ever saw it. He has testified that he did not. It was not sent to him direct. If it was retained by Disney, it undoubtedly would have been in their library. Mr. Churchill testified that he used the library very little. That he composed by thinking of a tune in his mind, and then writing it down on a piece of paper. Weighing all the probabilities, I have come to the conclusion that the evidence is not sufficiently strong for me to hold that Churchill actually did see and have in possession, prior to or at the time he wrote his composition, a copy of "Old Eli".

Were I to find from the evidence before me that Churchill had direct access to and did copy or use complainant's composition when he wrote "Some Day My Prince Will Come", I would again have to indulge in speculation, conjecture and suspicion.

█ Having thus found, complainant is not foreclosed from recovery herein. Direct access is hard to prove. The courts

have held that access may be inferred from the similarity of the two compositions.

As was stated in Wilkie v. Santly Bros., Inc., 2 Cir., 91 F.2d 978, at page 979: "But the charge of infringement does not fail merely because the infringer is not caught in the act, for access may be inferred or found circumstantially from the plan, the arrangement, and the combination of materials contained in the composition. [Citing cases.]" However, mere similarity is not sufficient. The court also stated in the above case: "Mere similarity would, of course, be insufficient if the compositions are the fruits of independent conceptions. Sheldon v. Metro-Goldwyn Pictures Corp. [2 Cir.] 81 F.2d 49, certiorari denied 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392; Nutt v. National Institute [2 Cir.] 31 F.2d 236; Gross v. Seligman [2 Cir.] 212 F. 930. In Arnstein v. Marks Music Corp., [2 Cir.] 82 F.2d 275 this court pointed out the need for showing plagiarism in order to establish infringement of a copyright. Where similarities or identities are relied upon, they must do more than engender a suspicion of piracy; they must establish piracy with reasonable certainty." In connection with the above, independent reproduction of a copyrighted musical work is not infringement. Nothing short of plagiarism will serve. Arnstein v. Marks Music Corp., 2 Cir., 82 F.2d 275. With these decisions in mind, I shall now take up the question of the alleged piracy of complainant's work.

Complainant's contention is that the chorus alone of "Some Day My Prince Will Come" is the infringing part of the song.

The pattern of complainant's musical composition is what is known as AB AC. That is, there is a theme of eight bars, the opening part of the chorus (A); a connecting strain of eight bars (B); then the theme repeated for another eight bars (A); and eight bars which are not the same as either of the others (C).

The main contention is the similarity of the notes in the first eight bars, which, of course, are repeated, making the sum of sixteen bars. However, complainant does not rely on this entirely; he says there are nine examples of identity or sustained similarity peculiar to "Old Eli" and found in "Some Day My Prince Will Come", as follows:

(1) Both compositions were written and published in the same key;

(2) Both compositions were written and published in the same tempo;

(3) Both were written and published with the same unique chorus structure;

(4) Both compositions were written and published with the same unique harmonic structure;

(5) The theme in each is repeated in the same way and at exactly the same place;

(6) Both have the same unique interval of a 6th instead of the customary 4th twice in the same place and between the same notes;

(7) Both have the same note progression at the same place and on the same notes with the exception of one note;

(8) Both compositions were published in the same rhythm;

(9) The notes in the themes of both compositions as repeated are identical with two minor changes.

As a summary, complainant insists that of thirty notes in "Old Eli", twenty-seven are identical in "Some Day My Prince Will Come."

The case was tried by two lawyers who were skilled in this type of litigation. Each relied for proof, in this branch of the case, upon the testimony of expert witnesses (skilled musicians), supplemented by charts showing the notes, and the musical conformation of each of the compositions in controversy. In addition, the testimony of these witnesses was explained, or their contentions supplemented by playing various extracts on the piano.

I might state at this point that the experts for both sides were well skilled in music for many years, and well qualified to testify. I think they honestly and fairly testified, and their testimony was their honest belief.

If complainant's claims of similarity were proven, they no doubt would point to plagiarism or piracy of complainant's work.

Some of his claims, standing alone, however, would not necessarily point to plagiarism. For instance, the fact that each was written in the same key is not significant. Both sides agreed that the key signature was not important. I assume complainant's argument is that all these similarities, great and small, important and minor, all add up to plagiarism. Complainant's witnesses supported him on these nine points of similarity, particularly the more important ones.

Much of the testimony was extremely intricate musically. It would not be of any avail for me to analyse or set forth the various analytical theories advanced by each. Suffice to say that complainant's witnesses testified that there was similarity in many things in the compositions; that both had the same pattern; the same harmonic structure; the same melodic embellishments; the same theme; and that the melodic contour was practically the same with a few differences. One of complainant's expert witnesses (Baron) said that out of thirty-two notes, twenty-five were identical. This same witness stated that the impression he got was of great similarity of treatment of an idea for a length of time; that there was great resemblance because there is identity of the two melodies.

The other main expert witness for the complainant (Savino) came to the same conclusion. He said, in addition, that the eight bars of the theme are almost identical and that the repeat in each case is the same, neither raised nor lowered; and that twenty-five out of thirty-two notes are substantially similar.

The respondents, on the other hand, dispute these claims of similarity between the two songs, and produced two experts of at least equal prominence in the music world. They, by their testimony, I am convinced, have sustained largely the contention of the respondents that while there may be some resemblance between the two pieces, it is only a natural similarity which one finds in most music of this type, and that there is nothing unique or strange in this similarity, no more than what one might expect; that there is no substantial similarity or identity between the two; that they are substantially different in form and character, and when played, sound differently both to the ear of the musician and to the ear of the average person.

The opinions of these men of music are so widely apart that it is impossible to reconcile them.

I shall now briefly take up the question of the alleged similarities as outlined by complainant. I do not place much reliance on the first two claimed similarities. As a matter of fact, the first (the key signature) respondents argue is not quite correct. Complainant's composition was originally written in the key of A, respondents' in the key of F; both were afterwards changed to various keys by publishers who commercialized them.

The same applies to the second, that is, the tempo. Complainant's composition was originally written in march time, while respondents' in waltz time.

The third alleged similarity, the pattern of each, does not add much to complainant's contention. Complainant claims that this is a unique pattern, popular when "Old Eli" was written, but obsolete, or at least not popular when "Some Day My Prince Will Come" was composed; and that this fact is at least suspicious. I cannot so hold with complainant. The proof is to the contrary. As a matter of fact one of complainant's witnesses (Baron) testified that it is quite usual for waltz songs to be of this pattern (AB AC).

The next claimed similarity has to do with the harmonic structure. Here there is also a sharp conflict. One of the witnesses for the respondents (Taylor) said that there was similarity in the first eight bars of each; that they were substantially similar with one significant difference. He discounted the importance of this, however, by saying: "It is a very common harmonic progression. You find the elements of it in the exercises in harmony books." Later, when he dissected the measures, this same witness made an analysis of the harmonies and found, as he said, many substantial differences which he illustrated by charts and by use of the piano.

Complainant's next claimed similarity is that in each composition the theme is repeated in exactly the same way at exactly the same place.

On this there is again a sharp conflict. Respondents' claim is that "Old Eli" has only a sixteen bar chorus, with a repeat sign and that there can be no repetition unless the sixteen bar chorus is repeated; that "Some Day My Prince Will Come" is a true thirty-two bar chorus with an opening phrase which is repeated after a connecting strain. Even assuming complainant's contention is sound, I do not, under the circumstances, regard it as a dominating sign of piracy.

The next point of claimed similarity has to do with the use of the 6th instead of a 4th in exactly the same place and between the same notes in each composition. This is claimed to be unique, and not customary.

On this point the experts sharply disagree. The experts for the respondents say that there is nothing unique or extraordinary in this at all. They illustrate their testimony by selections from two well known musical compositions—"Faust" and "Kunihild".

The next claimed similarity is that each has the same unique seven note progression at the exact same places, and on the exact same notes, with the exception of one note.

Here again a sharp conflict exists between the experts. Both parties have submitted charts showing the melodic line of the first eight bars of each composition, and these charts differ although made from the same material. The experts for the respondents contend that these charts show more differences than similarities. They all agree that the first interval is the same, but after that the experts are wide apart.

The next claimed similarity is that of rhythm. Complainant's contention is that both compositions were published in the same rhythm.

I do not place too much reliance on this contention. "Old Eli" was published as a march; and "Some Day My Prince Will Come" was originally written as a waltz, and later published for commercial purposes as a fox trot.

The last claimed similarity of the two songs is the alleged similarity of notes. Complainant's claim is that out of a total of thirty notes in "Old Eli", twenty-seven are identical in "Some Day My Prince Will Come."

On this point the experts disagreed. Mr. Taylor, for the respondents, was interrogated about this. I quote this question and his answer:

"Q. The notes in 25 measures are identical or substantially so? A. Well, frankly, I think that is nonsense. Really.

"The Court: What do you base that on?

"The Witness: I base that on the fact that digging out a note here and there, for example, writing an option note, writing in a note an octave higher or lower then it occurs in the actual printed score in order to make it look like the other song is not cricket."

Here again diagrams were used by each party. At first I was much impressed by the charts of the complainant; they did tend to show more similarity than would ordinarily appear by accident. But then,

the respondents charts were produced, and they showed many differences, that is, a similarity, but many differences. This part of the case presents an extremely difficult and intricate question of fact. One of the disputed questions had to do with passing notes, an "appogiaturi" note, and notes which were put in by way of decoration or embellishment. Complainant's experts gave their opinion that these notes found in "Some Day My Prince Will Come" were of no value and could be ignored; while respondents' experts gave as their opinion that these passing notes, "appogiaturi" notes, and so-called decorative and embellishing notes were of great value and important; further that the note called "appogiaturi" by complainant's witnesses was not such a note; and also that there were no notes in "Some Day My Prince Will Come" which might be considered decorative or embellishment.

It would be idle for me to attempt to reconcile the divergent claims. Both sides differ materially, with the same material to draw from. Respondents' experts contend that while there may be some similarity of notes, there are many differences. The summation of their testimony was that there was a similarity, but no identity either in actual notes or rhythm.

Mr. Taylor testified that as to the first four measures in each composition there was a similarity, but that there was by no means an identity, either in detail in actual notes or in rhythm, and that in viewing the two songs as a whole this similarity was entirely fortuitous and unconscious because the two songs were so entirely different in character; and after these four bars the notes went in so entirely different direction that the two themes of the two songs were not developed at all the same. On this question of similarity I quote from his testimony as follows: "I should say that the first eight bars of the two songs both as originally stated and as repeated show a certain similarity in general contour though not in detail. As for the other bars I find no similarity whatsoever between the two songs."

Comparing the measures arithmetically, measure by measure, Mr. Taylor found identity in only four or perhaps five of the thirty-two bars.

The other musical expert for the respondents, Mr. Bartholomew, agrees with Mr. Taylor in most of his testimony. It

140

might be well, for a second, to sum up the general tenor of his testimony. He stated that there was a similarity in the first four measures of each song, but that the rhythmatic structure of each was entirely dissimilar; that the harmonic structures were different; that the second four measures were different and the next eight measures were completely different; that the only similarity was the opening phrase of the chorus, that is, the progression of notes of the opening phrase was similar; that the choruses in their entirety were substantially different; that the similarity would not impress him as being any more similar than a number of other melodies that one might hear; that all popular music that is held down to a formula, more or less, is apt to be similar to other popular music that has been written at one time or another; that while the first eight bars were similar, there were more differences than similarities.

I have endeavored to point out that with respect to every salient point relied upon by complainant with the support of his musical experts, there is such a sharp conflict raised by respondents with the support of their musical experts, that I am unable to deduce therefrom that the complainant has fairly made out a case. I cannot differentiate between the two sets of experts; neither can I say that complainant's experts are correct and the respondents' incorrect.

I therefore have come to the conclusion that as far as this testimony is concerned, complainant has failed to convince the Court that the writer of the song "Some Day My Prince Will Come" copied the composition "Old Eli" to such an extent that it constituted piracy or plagiarism.

In coming to this conclusion I have also used my own musical sense, such as it is, and I have arrived at the result that while there are similarities between the two compositions, there are a great many differences. I have heard the compositions played, and to my ear there is a similarity, but not such a similarity as would impress one. In other words, I would not take the one for the other.

Neither do I find the similarity which Judge Hand found in Haas v. Leo Feist, Inc., D.C., 234 F. 105, at page 107: "Nevertheless, between the two choruses in question there is a parallelism which seems to my ear to pass the bounds of mere accident." Neither do I find such a situa-

tion as Judge Coxe found in Wilkie v. Santly Bros., Inc., D.C., 13 F.Supp. 136, at 137, affirmed, 2 Cir., 91 F.2d 978: "Unquestionably the melodies are strikingly alike in sound, and a comparison of the note structures shows almost complete identity in the first eight bars of the introduction, and the first fifteen and the last ten bars of the chorus, or over three-quarters of the most significant parts of the two songs."

I feel that the complainant has failed to make out a case. I am not convinced that the writer of the song "Some Day My Prince Will Come" lifted portions of "Old Eli", hoping to escape detection. Neither can I find from the evidence that the similarity is so great that it would appear that he unconsciously copied therefrom. On this last point, the evidence is not substantial enough to convince me that Mr. Churchill ever heard "Old Eli." He denies that he ever heard it, and the evidence does not tend to contradict him.

There are other elements, while not compelling, all add up to the result I have reached. "Old Eli" is a marching song, composed many years ago; the other is a waltz song, part of an extensive score written for a motion picture which necessarily would be in the glare of publicity. Its composer would expect it to be heard by a great number of people, not only by people who came to enjoy the picture and its music, but by people who would look for possible resemblances.

Complainant's song was not published in printed copies until 1936; it was not popular and had very little vogue before that. Respondents' song was written in November, 1934, and a copy of the manuscript deposited in the Copyright Office in January, 1935. Mr. Churchill was a professional writer of undoubted ability. He composed music directly on paper and not by playing a piano. He apparently had real talent for composing. He had composed a great deal of music prior to this song, while working for Disney. He was given the words for "Some Day My Prince Will Come" and was told that a romantic melody was wanted in connection with it. The words or lyrics required the musical setting to be in waltz time.

I therefore direct that a decree be entered herein dismissing the complaint, and judgment entered in favor of the respondents.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith. If findings of fact and conclusions of law are submitted for my signature, I would suggest that they be on five days' notice of settlement, typed, triple-spaced. The opposing counsels, if they be so disposed, should submit, on two days' notice, criticisms of the proposed findings, as counter-findings will avail them nothing.