**AMERICAN VISUALS CORPORATION,**
Plaintiff-Appellant,

v.

**Frederick A. HOLLAND and Sam Schwartz, Defendants-Appellees.**

No. 37, Docket 23979.

United States Court of Appeals
Second Circuit.

Argued Oct. 4, 1956.

Decided Nov. 20, 1956.

Socolow, Stein & Seton, New York City (A. Walter Socolow, New York City, of counsel), for plaintiff-appellant.

Mallin & Gross, New York City (Burton Perlman, Armand E. Lackenbach, New York City, of counsel), for defendants-appellees.

Before FRANK, MEDINA and HINCKS, Circuit Judges.

742.

FRANK, Circuit Judge.

## 1. Publication

The following facts appear in affidavits filed by defendants in support of their summary judgment motion.

Somewhat over 200 copies of plaintiff's work "Killer in the Streets" were disseminated in an effort to find a casualty or insurance company interested in using it in a safety advertisement campaign. On one occasion one hundred copies were placed on a table in Pocono Manor Hotel, Pennsylvania, along with other publications for unsupervised distribution, at a time when a convention of accident and casualty insurance executives were holding a convention at that hotel. Subsequently, plaintiff's former employee, the present defendant, Holland, induced the Association of Casualty and Insurance Companies to distribute copies to its 112 member companies, again with a view to obtaining business from them. While it is clear that the purpose of distribution was limited to interesting prospective purchasers, no limitation was placed on the persons who might obtain copies of the work, either by picking them up from the table in the instance where they were made available in the hotel, or by securing them from one of the insurance company employees who were sent copies in the hope of getting business.

In form, the material distributed consisted of photostatic copies of a "comprehensive rough dummy." It appears from the affidavits that—assuming a client accepted the substance of the work—there remained inking in of the pencilled art work and preparation for engraving, to put it in "final" form.

The content consisted of pictorial illustrations in cartoon form of at least three typical traffic situations in which driver carelessness led to accidents, with accompanying admonitions against improper use of motor vehicles. The booklets each contained notice of copyright.

In deciding whether certain acts constitute "publication," satisfying the requirements of 17 U.S.C. § 10,[1] we are confronted with numerous conflicting cases which, by their holdings, though not in their stated rationale, raise more than a suspicion that the term "publication" is clouded by semantic confusion where the term is defined for different purposes, and that we have here an illustration of the one-word-one-meaning-only fallacy.[2]

A number of cases have explicitly assumed that facts which would constitute "publication" for purposes of se-

1. 17 U.S.C. § 10. "Publication of work with notice. Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice shall be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor, except in the case of books seeking ad interim protection under section 22 of this title. July 30, 1947, c. 391, § 1, 61 Stat. 652."

Compare 17 U.S.C. § 2, "Rights of author or proprietor of unpublished work. Nothing in this title shall be construed to annul or limit the right of the author or proprietor of an unpublished work, at common law or in equity, to prevent the copying, publication, or use of such unpublished work without his consent, and to obtain damages therefor. July 30, 1947, c. 391, § 1, 61 Stat. 652."

2. See U. S. v. Forness, 2 Cir., 125 F.2d 928, 934–935; Andrews v. Commissioner, 2 Cir., 135 F.2d 314, 317 (C.A. 2); Irwin v. Simmons, 2 Cir., 140 F.2d 558, 560.

Such confusion could perhaps be avoided by using different words in the different contexts. See Commissioner of Internal Revenue v. Beck's Estate, 2 Cir., 129 F.2d 243, which suggested the use of the words "gift" "gaft" and "geft." Another device is, in some contexts, either to cut off the initial letter of the word (so that we would have "publication" and "ublication") or to spell the word backwards (yielding "publication" and "noitacilbup"). Cf. Old Colony Bondholders v. N. Y., N. H. & H. R. Co., 2 Cir., 161 F.2d 412, 448–449, dissenting opinion.

curing the author federal copyright protection, will also operate to divest him of his common law protection if he has not secured a federal copyright. In other words, the stated rationale of many copyright cases is that federal statutory copyright begins with the same acts of "publication" which will end the common law protection, and vice versa.[3]

■ It is, however, perfectly clear that the word "publication" does not have the same legal meaning in all contexts. Its copyright definition, for example, differs from its meaning where applied in respect of torts (see Restatement, Torts, Section 577) or in respect of privacy. See e. g., Jenkins v. Dell Publishing Co., D.C., 132 F.Supp. 556.

■ The copyright cases—by the results reached—likewise suggest that (a) where common law protection is sought because a federal copyright has not been applied for, the courts will require considerably more open dissemination before holding that publication has taken place so as to deprive the creator of the material of his rights in it, than (b) where a copyright certificate has been obtained and the plaintiff is claiming sufficient publication to enable him to maintain an action on the federal statute. Compare, e. g., Werckmeister v. Pierce & Bushnell Mfg. Co., C.C., 72 F. 54 (holding that exhibition of a painting in a public art gallery was sufficient publication to entitle plaintiff to recover under the Copyright Act) with Werckmeister v. American Lithograph Co., 134 F. 321, 68 L.R.A. 591 (holding that exhibition of a painting in a public gallery did not constitute publication divesting plaintiff of his common law protection, and distinguishing the earlier case on the ground that it was brought under the Copyright Act). Compare also Cardinal Film Corporation v. Beck,

D.C.N.Y.1918, 248 F. 368, A. Hand, J., and Stern v. Jerome H. Remick & Co., D.C.N.Y.1915, 175 F. 282, L. Hand, J., both holding that deposit of two copies of the work with the Library of Congress in compliance with the requirements of the Copyright Act, was sufficient publication to enable plaintiff to maintain suit under that Act, with Osgood v. A. S. Aloe Instrument Co., C.C.Mo.1895, 69 F. 291, holding that deposit of two books with the Library of Congress in advance of obtaining copyright was not publication constituting dedication at common law so that plaintiff could subsequently maintain an action under the Federal statute when he obtained a copyright certificate. Contra: Brown v. Select Theatres Corp., D.C.1944, 56 F.Supp. 438, where Judge Wyzanski held that deposit did constitute dedication at common law; in that case, however, the right to maintain an action on the statute was preserved. Compare further Allen v. Walt Disney Productions, D.C.N.Y.1941, 41 F.Supp. 134, holding that distribution of copies of a song to orchestra leaders, playing of song in restaurants and broadcasting over radio, did not constitute dedication divesting plaintiff of his common law rights; McCarthy & Fischer v. White, D.C.N.Y. 1919, 259 F. 364, A. Hand, J. (substantially similar), and Patterson v. Century Productions, D.C., 93 F.2d 489, to the effect that showing of a motion picture on various occasions to thousands of persons was "limited publication" which did not amount to publication requiring plaintiff to deposit two copies with in copyright office in advance of maintaining suit, with Ladd v. Oxnard, C.C.1896, 75 F. 703, holding that delivery of a book on a loan basis, giving credit ratings on stone and granite dealers to 175 subscribers, was general pub-

3. See, e. g., White v. Kimmell, D.C., 94 F. Supp. 502, reversed 9 Cir., 193 F.2d 744; Supreme Records v. Decca Records, D. C., 90 F.Supp. 904; Lampert v. Hollis Music, Inc., Sup., 109 N.Y.S.2d 319; Loew's, Inc., v. Superior Court, 18 Cal. 2d 419, 115 P.2d 983; Benelli v. Hopkins, 197 Misc. 877, 95 N.Y.S.2d 668; Brunner v. Stix, Baer & Fuller Co., 352 Mo. 1225, 181 S.W.2d 643; National Comics Publications v. Fawcett Publications, 2 Cir., 1951, 191 F.2d 594.

lication entitling plaintiff to copyright protection.

Cases such as these indicate that, as we said above, the courts apply different tests of publication depending on whether plaintiff is claiming protection because he did not publish and hence has a common law claim of infringement—in which case the distribution must be quite large to constitute "publication"—or whether he is claiming under the copyright statute—in which case the requirements for publication are quite narrow. In each case the courts appear so to treat the concept of "publication" as to prevent piracy. They tend to bear out Judge Putnam's suggestion in Ladd v. Oxnard, supra, 75 F. at page 730, that " * * * it may well be questioned whether the mere fact that one has not published, and the consequential fact that he has a remedy at common law, deprives him of a concurrent remedy under the statute in the event that he has complied with all its requirements for obtaining a federal copyright."

■■ The doctrine of limited publication, on which the district judge relied for finding no publication here, has generally been invoked by courts to protect the common law remedy where the statutory remedy is unavailable. Werckmeister v. American Lithograph Co., supra; Osgood v. A. S. Aloe Instrument Co., supra, Allen v. Walt Disney Productions, supra, McCarthy & Fischer v. White, supra, Patterson v. Century Productions, supra. Moreover, where the doctrine is applied to help a plaintiff seeking to maintain an action at common law, it is clear that the distribution which will avoid a destruction of the common law claim "must be restricted both as to persons and as to purpose, or it cannot be called a private or lim-

ited publication." White v. Kimmell, 9 Cir., 1952, 193 F.2d 744, 747.[4] In the present case, it is clear that the distribution was limited as to purpose: The creator was seeking a purchaser of his ideas for a safety campaign. That was the only purpose, indeed, for which plaintiff's work was created and the only reason plaintiff could have for distributing it. On the facts it would seem plaintiff did everything it could to distribute, bearing in mind that the creation itself was for a distinct purpose. But plaintiff placed no limitation on who could inspect, retain or receive, through any of the original distributees, a copy of his work. If we were to hold that he had not "published" within the meaning of 17 U.S.C. § 10, we would be holding that federal copyright protection is unavailable to persons, in plaintiff's position, who create works with a view to having others purchase them for wider distribution. We conclude therefore, that while the "purpose" of the distribution was limited, the "persons" to whom it might be given was unlimited.

■ We need not decide whether mere deposit with the Copyright Office is sufficient publication under the Copyright Act (as was decided in Stern v. Jerome H. Remick & Co., supra, Cardinal Film Corp. v. Beck, supra, and Brown v. Select Theatres Corp., supra) or whether "something more" is necessary.[5] Some doubt is cast upon these decisions when one considers that the present 17 U.S.C. § 13 requires deposit "after copyright has been secured by publication," implying that copyright is secured by publication other than deposit with the copyright office; see also 17 U.S.C. § 14, and Heim v. Universal Pictures Co., 2 Cir., 154 F.2d 480. But if we hold that deposit with the Copyright Office is not

4. Compare here Atlantic Monthly Co. v. Post Pub. Co., D.C.1928, 27 F.2d 556 holding a single sale for 10¢ of one of three writing copies, sufficient publication under the Federal Copyright Act.

5. It does not affirmatively appear from the papers before us that plaintiff deposited copies with the Copyright Office. How-

ever, from the fact that 17 U.S.C. §§ 13, 14 require such deposit as prerequisite to maintenance of suit under the Copyright Act and that no challenge has been made on this point, we take it that plaintiff has complied—as he alleges in his complaint—with the requirements of the Act, including those concerning deposit.

enough, even so we think plaintiff has published sufficiently to meet the requirement of 17 U.S.C. § 10. White v. Kimmell, supra, held that publication by placing a number of copies in a hotel lobby for unsupervised distribution, and lack of restriction on recipients in their right to pass on copies to others, were sufficient to defeat even the common law claim. See also D'Ole v. Kansas City Star Co., C.C.1899, 94 F. 840 (distribution of copies for advertising purposes), and Ladd v. Oxnard, supra. We consider these cases as authority for holding that publication took place on the facts here, however the term "publication" be defined.

### 2. Copyrightable Form

▆▆▆▆ Nor have we any difficulty finding that the photostatic copies of pencilled art work distributed by plaintiff were in copyrightable form. See White v. Kimmell, supra (work published although distributed in mimeographed form, and the author had refused to

publish in book form because he did not consider the work completed). Nor does 17 U.S.C. § 5,[6] specifying the material which may be the subject of copyright, warrant any limitation on copyrighting of a work merely because it may subsequently achieve more perfect or final form.[7]

Reversed and remanded.

MEDINA, Circuit Judge (concurring).

I am satisfied that, whether or not there is a difference between publication sufficient to extinguish literary property and publication sufficient to support a statutory copyright, in the case at bar enough appears to support the statutory copyright, whether the test applied be a liberal or a rigid one. That being true I do not think it necessary to comment on the supposed difference, which seems not to have been previously perceptible to the courts or to the copyright bar. See, e. g., Nimmer, Copyright Publication, 56 Colum.L.Rev. 185.

6. 17 U.S.C. § 5. Classification of works for registration.

"The application for registration shall specify to which of the following classes the work in which copyright is claimed belongs:

"(a) Books, including composite and cyclopedic works, directories, gazetteers and other compilations.

"(b) Periodicals, including newspapers.

"(c) Lectures, sermons, addresses (prepared for oral delivery).

"(d) Dramatic or dramatico-musical compositions.

"(e) Musical compositions.

"(f) Maps.

"(g) Works of art; models or designs for works of art.

"(h) Reproductions of a work of art.

"(i) Drawings or plastic works of a scientific or technical character.

"(j) Photographs.

"(k) Prints and pictorial illustrations including prints or labels used for articles of merchandise.

"(l) Motion-picture photoplays.

"(m) Motion pictures other than photoplays.

"The above specifications shall not be held to limit the subject matter of copyright as defined in section 4 of this title, nor shall any error in classification invalidate or impair the copyright protection secured under this title. July 30, 1947, c. 391, § 1, 61 Stat. 652."

7. Our disposition of the copyright claim makes it plain that the court below has jurisdiction to determine the other claims of the complaint. We note, however, that, even if the copyright claim had been properly dismissed, it has sufficient substance and is so related to the non-statutory claims set forth in the other counts that, under 28 U.S.C. § 1338(b) the district court would have had jurisdiction of the nonstatutory claims. See Schreyer v. Casco Products Corp., 2 Cir., 190 F.2d 921, 923–924; Telechron, Inc., v. Parissi, 2 Cir., 197 F.2d 757, 760–761.