EDGAR SALTUS, Respondent, *v.* BELFORD COMPANY, Appellant.

A publisher, while publishing the works of an author under his license and permission and under an agreement upon the part of the former to pay a royalty, may not question the author's right to control the publication, this may only be done after a surrender or a withdrawal of the license, and until the contract is abrogated he may publish in no other way under it.

In an action to compel the defendant to render an account as to royalties agreed to be paid by the latter to plaintiff upon certain books of which plaintiff is the author, pursuant to certain contracts between the parties, by which plaintiff granted the defendant the right to publish and sell the books, it agreeing to pay the royalties specified, defendant by its answer admitted the making of the contracts, but denied any breach thereof. Upon application for an injunction restraining the publication and sale *pendente lite,* it appeared that defendant had failed to pay the royalties as agreed and was insolvent. *Held,* that defendant could not raise the objection that the papers did not disclose the existence of a copyright protecting plaintiff's rights as author; and that the granting of the application was within the discretion of the court below.

(Argued June 6, 1892; decided June 17, 1892.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made April 22, 1892, which affirmed an order of Special Term granting an injunction *pendente lite,* restraining the defendant from printing, publishing or selling certain novels of which plaintiff is the author.

This action was brought against defendant, the publisher of certain novels of which plaintiff was the author, to compel it to account to him for the royalties on the sale of such novels under certain contracts for their publication and sale made between plaintiff and defendant, and to declare such contracts to be determined and at an end, owing to the failure of said defendant to render any account or pay any royalty as provided for in said contracts.

The complaint also asked for a permanent injunction restraining defendant from publishing or selling any copies of said works.

The complaint alleged the making of the contracts; that at the time he was and now is the author and owner of the works named; that by the terms of the contract, in case of failure on the part of defendant to pay the royalties agreed upon, plaintiff had the right at his election to declare them determined and at an end; that defendant had and was continuing to print and sell large numbers of copies of said works, but had failed to render an account or to pay the royalties agreed upon, and that it was insolvent; that plaintiff had, by reason of the default, notified defendant of his election to terminate the contracts.

Defendant's answer admitted the making of the contracts, and its publication of the works named, denied the default alleged and its insolvency, also the right of the defendant to terminate the contracts.

The injunction *pendente lite* was granted upon the pleadings and upon affidavits on the part of the plaintiff alleging the refusal to account and the default in payment of royalties, and alleging facts tending to show the insolvency of defendant. No opposing affidavits were presented.

*Frederic R. Kellogg* for appellant. Plaintiff's right to the injunctive relief demanded must, if it exists at all, be based upon valid copyrights owned by him upon the books in question, and not upon any rights given him by the common law or by the contracts set forth in his papers. (*Potter* v. *McPher-*

*son,* 21 Hun, 562; *Palmer* v. *De Witt,* 47 N. Y. 532; *Hyatt* v. *Ingalls,* 124 id. 93.) The papers fail to sufficiently show that the plaintiff is the owner of valid copyrights upon any of the novels whose publication he seeks to enjoin. (*Parkinson* v. *Laselle,* 3 Saw. 330; *Yuengling* v. *Schile,* 20 Blatch. 452; *Jollie* v. *Jacques,* 1 id. 68; *T. Co.* v. *Curtin,* 36 Fed. Rep. 829.) If, however, it be held that the papers adequately show the existence of valid copyrights upon the works in question, it follows that the courts of this state have no jurisdiction to grant the injunction appealed from. (*Hartell* v. *Tilghman,* 99 U. S. 547; *Mayer* v. *Hardy,* 127 N. Y. 125.) Even if no issue were here raised as to the existence and validity of plaintiff's copyright, or if the defendant was for any reason estopped from raising such an issue, the state courts would still be powerless to restrain by injunction the publication of any infringing work. (*C. S. S. Co.* v. *Clark,* 100 N. Y. 365; *Childs* v. *Tuttle,* 54 Hun, 59; *Hyatt* v. *Ingalls,* 124 N. Y. 93; *Waterman* v. *Shipman,* 41 N. Y. S. R. 517; *S. P. P. Works* v. *Starling,* 127 U. S. 376; *Potter* v. *McPherson,* 21 Hun, 562.) The moving papers are fatally defective, inasmuch as they fail to set forth copies of the contracts in question, or in any way to account for their absence. (*De Weerth* v. *Feldner,* 16 Abb. Pr. 299; *Thompson* v. *Best,* 4 N. Y. Supp. 229; *Hingston* v. *Miranda,* 12 C. P. 442.)

*Aug. S. Hutchins* for respondent. The motion for an injunction herein is made before the proper tribunal. (*Hartell* v. *Tilghman,* 99 U. S. 547; *M. Co.* v. *Reinhol,* 102 N. Y. 170; *Mayer* v. *Hardy,* 127 id. 131; *Waterman* v. *Shipman,* 130 id. 307.) The admission of the defendant that the plaintiff was the author of the literary works in question and that defendant entered into these contracts with him disposes of the whole defense, because if the plaintiff was the author of these literary works and the defendant entered into those contracts with him the question whether or not copyrights were afterwards obtained cannot possibly be made an issue in the case. (*Marston* v. *Swett,* 66 N. Y. 206–212; *Middlebrook* v. *Broadbent,* 47 id. 443.)

FINCH, J.   The principal objection urged against the temporary injunction granted in this action and operative during its pendency is that the papers nowhere disclose the existence of a copyright covering and protecting the plaintiff's right as author of the books specified in the contract.   The drift of the argument is that in the absence of a copyright the defendant company was at liberty to publish the books irrespective of the will of the author, without paying tribute to him, and whether he consented or not, and that the court could not interfere with that right or take it away by injunction.   So much might be true in a case where no contract covering the publication existed.   But here the author's right to control the publication is conceded by the contract itself.   Its terms show an admitted ownership in the plaintiff and a right to give or withhold authority in the defendant company to publish.   His consent was bought and agreed to be paid for in the form of a royalty, and as to one of the books, and that apparently deemed to be the most valuable of all, the defendant agreed to procure for the plaintiff a copyright.   As to that particular book, it may easily be assumed that the defendant could not publish it without the author's consent and authority, because it existed only in manuscript and in his possession, and could not be obtained without his permission.   While it does not appear that the other works were copyrighted, it is not shown that they were not, and it is not necessary to speculate about the fact when the owner's right is conceded by the contract and the authority to publish is bought of him.   For aught that appears, they also may have existed only in manuscript when first printed by the defendant, so that their publication could not have been accomplished except with his consent.   It does not matter, however, what the source of the author's control in fact was, or how strong or weak might have proved to be his authority and ownership.   It is enough that the publisher, by the contract made, conceded the author's right, and so published the works with his consent, and was not at liberty during the existence of the contract to publish them otherwise.   If, as a matter of business, the defendant chose to defy the right of

the author, whatever it might prove to be, the company was bound at least to put an end to the contract, to set itself free from both its protection and its obligations, and venture upon the publication when so situated that it could not defend the act, if assailed, by pleading the license of the contract and the author's permission. The complaint against the defendant was that it was publishing under that permission and under the protection of the contract while steadily violating its terms; that it was insolvent and unable to pay, so that every copy sold was a total loss to the author; and the relief asked was that the defendant account and the contract be abrogated. It was entirely proper in that state of facts to restrain any further publication under the permission of the contract pending the litigation, and the question involved is not one of copyright, but simply of contract. A licensee under a patent cannot assail it as void while manufacturing under its protection. He cannot set it at defiance until his license has been surrendered or withdrawn, and his act can be treated as an infringement. (*Marston* v. *Swett*, 66 N. Y. 206.) In like manner the defendant company cannot question or deny the author's right while publishing under his license and permission; and we are not at all concerned for the present with either the character or efficacy of that right. I think the injunction, properly construed, restrains only the publication under the contract, for the defendant can publish in no other way until that contract is abrogated; and until he is left free to indulge in a piracy of the author's work unprotected by the contract, and where his act may be assailed as an infringement of any right which may turn out to be in the author's possession, he must remain subject to the restraint which the court has imposed. We are not required to consider what ultimate judgment may be awarded to the plaintiff. For the present, the court has simply said that the defendant shall not continue to violate the contract while protected by its permission, and when it is unable to pay the compensation which would accrue.

The ground assumed by the defendant is that the plaintiff

had rescinded the contract at or before the commencement of the action, and so both parties were remitted to their original rights. The pleadings show a different state of facts. The complaint asks as relief a judicial rescission or termination of the contract which will bind both parties, and makes that demand upon the ground of a violation of its terms; and the answer denies such violation, denies the asserted insolvency, and alleges payment in full of all the royalties which have accrued. And so the defendant stands in the attitude of claiming full performance on its part and of denying the plaintiff's right to an abrogation of the contract. While maintaining that position it cannot also insist that the contract is already abrogated and the parties remitted to those original rights which were independent of it. *Hyatt* v. *Ingalls* (124 N. Y. 93), upon which the defendant relies, well illustrates the distinction. The injunction stricken out in that case was a part of the final decree which terminated and ended the license. Any future manufacture of the patented article could not be under the license judicially rescinded, and must of necessity be either lawful or an infringement over which the court could have no jurisdiction. But here the license is not rescinded, and will not be until the final judgment, and may not be then, if the defendants' answer is true; and so the publication pending the litigation would be under the contract and, therefore, within the equitable control of the court. In the exercise of its discretion it restrained conduct asserted to be in violation of plaintiff's rights and inflicting an injury for which there could be no redress on account of the insolvent condition of the company. We see no reason to question the propriety of the injunction.

The order should be affirmed, with costs

All concur.

Order affirmed