## MONTGOMERY *v.* WATERBURY.

(New York Superior Court—General Term, January, 1893.)

Plaintiff's complaint was framed upon the theory that he was entitled to recover the reasonable value of a license to use a patented process. He had a verdict upon proof of an agreement between him and defendants that he, as superintendent of their factory, was to use the patented process in defendants' business for a reasonable compensation over and above his salary. The evidence to prove plaintiff's case was admitted without objection that it varied from the complaint. *Held*, that after the close of the testimony on both sides, it was too late to raise the point.

*Held*, further, that the variance between the proof and the allegations of the complaint were not sufficient to reverse the judgment.

In an action to recover compensation for the use of a patented process, the licensee cannot set up the invalidity of the patent.

Under a contract, defendants had paid plaintiff for the use of his patents ten per cent of the value of the gain in the weight of the goods manufactured. At the end of the term of the contract, he was told by one of defendants' firm to go on and that a satisfactory arrangement would be made with him for the use of his patents. Plaintiff went on, used his patents, and all subsequent efforts to get at a fixed basis of compensation failing, left defendants' employ. *Held*, that the actual gain in weight during the period in controversy furnished the best basis for computing the reasonable value of the use of plaintiff's processes, and proof as to the validity or invalidity of his patents was immaterial.

19

APPEAL by the defendants from a judgment entered in favor of the plaintiff upon the verdict of a jury, and from an order denying defendants' motion for a new trial. The opinion states the case.

*Betts, Atterbury, Hyde & Betts*, for defendants (appellants).

*Hathaway & Montgomery*, for plaintiff (respondent).

FREEDMAN, J    The action was brought to recover the reasonable value of a license to use two patented processes relating to the manufacture of ropes and yarns, and familiarly known as the tar and the oil processes, under an alleged license from the plaintiff to the defendants. This is the theory of the complaint. Upon the trial the plaintiff had a verdict upon the theory that pursuant to an agreement made between him and the defendants, he, as the superintendent of defendants' factory, was to use the said patented processes in the business of the defendants and for a reasonable compensation over and above his regular salary. No claim was made by the defendants at any time during the trial that they were in any way, surprised by the proof, and all the evidence to prove the plaintiff's case was admitted without objection on the part of the defendants that it varied from the complaint.

Under these circumstances it was too late for the defendants to attempt to raise the point after the close of the testimony on both sides. Even then they did not claim that they had been surprised. Moreover, there was no variance between the allegations of the complaint and the proof sufficient to call for a reversal of the judgment. The proof abundantly established that the plaintiff was employed to use in the business of the defendants certain processes in oil or tar which he had invented and for which he had applied for or obtained a patent, and that while the plaintiff had the right for the purposes of the contract to use any other processes which he might invent, yet as matter of fact no others were invented, and what the plaintiff was paid for at the end of the first year was for the use of his patented processes mentioned in

the complaint, and when the agreement was made for the continuation of that use, the idea was that those processes or other similar processes, should continue to be used, and, as matter of fact, the plaintiff did, use the same processes which he had used before, and for which he had a patent, so that the intent of the parties in substance was that the plaintiff should be paid for the use of his patents.

The defendants having contracted with the plaintiff for the use of his patents, and agreed to pay him a compensation therefor, cannot set up the invalidity of the patents as a defense to the action to recover the compensation. *Hyatt* v. *Ingalls*, 49 N. Y. Super. Ct. 375 ; 124 N. Y. 93.

It is not necessary, as happened to be the additional fact in *Hyatt* v. *Ingalls*, that the defendants should have bound themselves by the express terms of their agreement not to question the validity of the plaintiff's patents, for even without such a clause they are estopped. *Saltus* v. *Belford Co.*, 133 N. Y. 499.

Nor is it necessary to show an express agreement to pay for the use or an agreement for a fixed sum. An action will lie to recover the reasonable value of the use of a patent where the patent has been used under such circumstances as are sufficient to warrant the inference of an implied agreement to make compensation for the use. *United States* v. *Palmer*, 128 U. S. 262; *Packet Company* v. *Sickles*, 19 Wall. 611.

The defendants insist, however, that even if they were estopped from raising at the trial the point of the invalidity of the patents as a complete defense to plaintiff's cause of action, evidence of the validity or invalidity of the plaintiff's patents was material as affecting the value of the use of the patents. The action is not for a fixed license fee, but for the reasonable value of the license during a certain period. The defendants never promised a definite sum. In such a case the validity or invalidity of the patent ordinarily has an important bearing on the amount of the value to be recovered. But in the present case such proof became immaterial for the following reasons:

For the year preceding the period in controversy here there was a written contract in force between the parties under which the defendants were bound to pay to the plaintiff for the use of his patents ten per cent of the value of the gain in weight of the goods manufactured. Rope is sold by weight, that is, at so much a pound, and it was considered that if any of plaintiff's processes would take the same amount of raw material, that is, so much hemp or sisal, and make out of it more pounds of rope than could be obtained by the old method, the gain in weight so obtained would be the direct profit of the process. Under this contract the plaintiff did use his processes and with them produced a gain in the weight of the goods. At the end of the year, or rather as soon thereafter as the books were made up, the defendants furnished the plaintiff with a statement of such gain in weight as shown by their books as compared with the gain in weight during the previous year, and in accordance with this statement they paid to the plaintiff as his ten per cent of the profit so made by them the sum of $8,139, thereby admitting that by the use of plaintiff's processes they had made a gain of over $80,000 over and above the gains which they would have made with the old methods. At the end of the year for which this contract ran, but before any account for that year had been stated or settled between the parties, the plaintiff had a conversation with one of the members of defendants' firm in regard to continuing the use of the processes referred to. Plaintiff said that the arrangement for one year had expired, but that the result had not yet been ascertained, and whether he should go on and continue to use his processes. He thereupon was told to go on, as that was all the money there was in the business, and that a satisfactory arrangement would be made with him for the use of the processes. In consequence of this assurance the plaintiff went on and used the processes as before. Subsequently some efforts were made to get at a fixed basis, but without success, and the plaintiff finally left.

These facts now stand established by the verdict of the

jury. In view of these facts, if the plaintiff was entitled to recover at all, the actual gain in weight during the period in controversy furnished the best basis for computing the reasonable value of the use of plaintiff's processes, and the case was submitted to the jury upon this theory. The jury was instructed to determine what the agreement was between the parties, and, if they found it to be as claimed by the plaintiff, to find the actual gain in weight during the period in question upon the whole evidence, and after paying due regard to the explanatory evidence given by and on behalf of the defendants, and then to award to the plaintiff ten per cent of the profits represented by such gain in weight, if they should think it proper; and if they should not think it proper, and consider such a rate to be excessive, to award such a sum as under all the circumstances would constitute a reasonable compensation. This was all the defendants were entitled to. No request was made that any other question of fact should be submitted. The period for which compensation was claimed consisted of six months and fifteen days, and under the instructions given to them, the jury found a verdict of $3,136. There is sufficient evidence to sustain the verdict for this amount.

The parts of the contract with the National Cordage Company, which were admitted in evidence, were evidently admitted to contradict the testimony of one of the defendants upon a material point, and for this purpose the evidence was competent.

Upon a careful review of the whole case, no exception has been found which calls for reversal.

The judgment and order should be affirmed, with costs.

McADAM and GILDERSLEEVE, JJ., concur.
Judgment affirmed.