TAMS-WITMARK MUSIC LIBRARY, INC., Appellant, *v.* NEW OPERA COMPANY, INC., Respondent, and DANIEL L. BROWN, Impleaded Defendant-Appellant, et al., Defendants.

Argued March 9, 1948; decided July 16, 1948.

*Albert R. Connelly, George S. Collins* and *Jack W. Robbins* for appellants. I. Irrespective of the validity or invalidity of plaintiff's copyright, defendant's agreement to pay royalties in respect of a period prior to termination of the license is enforcible. There was no failure of consideration because in fact defendant received everything for which it bargained,

irrespective of the validity of the copyright, and enjoyed substantial benefits under the contract. (*Marston* v. *Swett,* 66 N. Y. 206; *Hyatt* v. *Dale Tile Mfg. Co.,* 106 N. Y. 651, 125 U. S. 46; *Farnsworth* v. *Boro Oil & Gas Co.,* 216 N. Y. 40; *Palmer* v. *De Witt,* 47 N. Y. 532; *Saltus* v. *Belford Co.,* 133 N. Y. 499.) II. Defendant is estopped to deny the validity of plaintiff's copyright. (*Prevot* v. *Lawrence,* 51 N. Y. 219; *Skinner* v. *Wood Mowing & Reaping Machine Co.,* 140 N. Y. 217; *Saltus* v. *Belford Co.,* 133 N. Y. 499; *Sola Elec. Co.* v. *Jefferson Elec. Co.,* 317 U. S. 173; *McGregor* v. *Westinghouse Co.,* 329 U. S. 402.) III. The fact that plaintiff's title was expressly warranted does not affect the insufficiency of the defense. (*Vernam* v. *Smith,* 15 N. Y. 327; *Rosenthal Paper Co.* v. *National Folding Box and Paper Co.,* 226 N. Y. 313; *Marston* v. *Swett,* 66 N. Y. 206; *Herzog* v. *Heyman,* 151 N. Y. 587; *O'Brien* v. *Jones,* 91 N. Y. 193; *McGiffin* v. *Baird,* 62 N. Y. 329; *Burt* v. *Dewey,* 40 N. Y. 283; *Case* v. *Hall,* 24 Wend. 102.) IV. Defendant's refusal to pay royalties did not constitute repudiation of the license. (*Skinner* v. *Wood Mowing & Reaping Machine Co.,* 140 N. Y. 217; *Hyatt* v. *Dale Mfg. Co.,* 106 N. Y. 651, 125 U. S. 46; *Hyatt* v. *Ingalls,* 124 N. Y. 93; *Hurd* v. *Gere,* 27 App. Div. 625; *Skidmore* v. *Fahys Watch Case Co.,* 28 App. Div. 94; *Martin* v. *New Trinidad Lake Asphalt Co.,* 182 App. Div. 719; *Heller & Son, Inc.,* v. *Lassner Co.,* 214 App. Div. 315; *Frost Railway Supply Co.* v. *T. H. Symington & Son,* 24 F. Supp. 20.) V. Plaintiff had and still has a valid common-law copyright in and to the stage performing rights to the Merry Widow operetta. (*Boucicault* v. *Wood,* 3 Fed. Cas. 988; *Daly* v. *Walrath,* 40 App. Div. 220; *Jewelers' Mercantile Agency* v. *Jewelers Weekly Publishing Co.,* 155 N. Y. 241, 84 Hun 12; *Caliga* v. *Inter Ocean Newspaper,* 215 U. S. 182; *Heim* v. *Universal Pictures Co.,* 154 F. 2d 480; *Osgood* v. *A. S. Aloe Instrument Co.,* 69 F. 291.)

*Louis Okin, Millard H. Ellison* and *Saul J. Baron* for respondent. I. Defendant-respondent's predecessor obtained a statutory copyright in 1907; thereby his common-law rights were extinguished; his acts and statements are binding on appellants. (*Davies* v. *Bowes,* 209 F. 53; *M. Witmark & Sons* v. *Standard Music Roll Co.,* 221 F. 376; *Chautauqua School of Nursing* v. *National School of Nursing,* 211 F. 1014; *M. Witmark & Sons* v.

*Calloway,* 22 F. 2d 412; *Freudenthal* v. *Hebrew Pub. Co.,* 44 F. Supp. 754.) II. Appellants cannot dispute defendant-respondent's predecessor's copyright or his acts and statements. (*Abeel* v. *Van Gelder,* 36 N. Y. 513; *Hurlburt* v. *Hurlburt,* 128 N. Y. 420; *Staley* v. *Nellis,* 188 App. Div. 325.) III. The statutory copyright extinguishes all common-law rights; the two cannot exist together with respect to the same matter. (*Cohan* v. *Robbins Music Corp.,* 244 App. Div. 697; *Photo-Drama Motion Picture Co.* v. *Social Uplift Film Corp.,* 220 F. 448; *Societe Des Films Menchen* v. *Vitagraph Co.,* 251 F. 258; *Leven* v. *Schulman,* 178 Misc. 763; *Loews, Inc.,* v. *Superior Ct. of Los Angeles Co.,* 18 Cal. 2d 419; *O'Neil* v. *General Film Co.,* 171 App. Div. 854.) IV. When defendant-respondent's predecessor's copyright expired in 1935, the matter he had deposited became part of the public domain. (*Scott Paper Co.* v. *Marcalus Mfg. Co.,* 326 U. S. 249; *RCA Mfg. Co.* v. *Whiteman,* 114 F. 2d 86, 311 U. S. 712; *Brown* v. *Select Theatres Corp.,* 56 F. Supp. 438.) V. The material defendant-respondent's predecessor copyrighted became available for the public's use no later than 1935 when the copyright expired and was not renewed. (*Scott Paper Co.* v. *Marcalus Mfg. Co.,* 326 U. S. 249; *Cardinal Film Corp.* v. *Beck,* 248 F. 368; *Patterson* v. *Century Productions, Inc.,* 93 F. 2d 489; *Falk* v. *Schumacher,* 48 F. 222; *Burrows-Giles Lithographic Co.* v. *Sarony,* 111 U. S. 53; *No-Leak-O Piston Ring Co.* v. *Norris,* 277 F. 951.) VI. The doctrine of estoppel should not be applied in this case. (*Schutte & Koerting Co.* v. *Wheeler Condenser & E. Co.,* 295 F. 158; *Pomeroy* v. *New York Hippodrome Corp.,* 197 App. Div. 114; *Dutchess Tool Co.* v. *Kolb,* 44 App. Div. 624; *Buffalo Rubber Mfg. Co.* v. *Batavia Rubber Co.,* 90 Misc. 418; *Lester* v. *Palmer,* 86 Mass. 145; *San Cross* v. *Huntley,* 13 Wend. 385; *Paulson* v. *Kenney,* 110 Ore. 688; *Buffalo Rubber Mfg. Co.* v. *Batavia Rubber Co.,* 90 Misc. 418.)

DESMOND, J. In 1943, plaintiff, as agent for an undisclosed principal (who turned out to be defendant-appellant Brown) in an agreement to which we shall refer hereafter, granted to defendant New Opera a license or permit to produce the operetta " The Merry Widow " in New York City. That writing contained a recital that plaintiff represented " the owners of the stage performing rights for the United States " of the operetta, and a warranty, on behalf of the " owner " that it (the unnamed

person) was the " sole owner of the stage and public performing rights for the United States and Canada of the dramatico-musical composition Merry Widow " and had " the right to make " the agreement. Pursuant to that agreement the operetta was produced by defendant New Opera, which, according to the contract terms, paid to plaintiff about $50,000 in royalties. That 1943 contract contained a provision giving New Opera an option for a second license to cover a " road tour " outside New York City. Defendant exercised this option and in 1944, a new agreement was made and a second license or permit granted. Defendant New Opera then began to perform under that second contract. About a month after that second contract had been entered into, defendant New Opera notified plaintiff that it would pay no more royalties because it had discovered, it said, that Brown's copyright had expired some years before. Plaintiff then brought this suit for royalties due under the second contract, and on the trial proved that they amounted to a little less than $9,000. Defendant New Opera put in two counterclaims. In each of those counterclaims, New Opera demanded return to it by plaintiff and Brown of $50,526.13, being the amount paid to plaintiff under the first contract, plus $1,000 paid under the second contract. Both counterclaims went on the theory that neither plaintiff nor plaintiff's principal, defendant Brown, owned the stage performing rights of the Merry Widow, which stage rights, according to defendant New Opera, were and are in the public domain. The first counterclaim demanded the money back on the theory of failure of consideration and the second on the theory of breach of warranty, but each claim demanded back all the money paid by defendant New Opera to plaintiff, on both contracts. The case went to trial in Supreme Court, New York County, before a jury. The only question submitted to the jury was as to whether the version of the operetta licensed by plaintiff to defendant New Opera was substantially identical with the version which one Savage (Brown's predecessor in interest) had copyrighted or attempted to copyright in 1907. The jury decided this issue in favor of New Opera, and it is now out of the case. The Trial Judge had instructed the jury that if it so found, the verdict would have to be for defendant New Opera. The jury accordingly rendered a verdict in favor of defendant New Opera against plaintiff

and defendant Brown on the counterclaims, in the full amount of $50,526.13 with interest.

Plaintiff and Brown appealed to the Appellate Division, First Department, which modified the judgment below as follows: it held that, in view of certain recitals in the second (1944) agreement, there was a question of fact which should have been submitted to the jury as to whether defendant, in the 1944 agreement, had released any claim for the return of its money on the first agreement; the Appellate Division held that otherwise the judgment was not erroneous, so it reduced the amount of the recovery on the counterclaims to the $1,000 advanced under the second contract, and severed the issue as to the amount paid under the first contract, ordering a new trial with respect to that latter amount. Plaintiff appealed to this court from so much of the judgment as affirmed the judgment dismissing its complaint and awarding $1,000 on the counterclaims to defendant New Opera against plaintiff and against defendant Brown. Defendant Brown appealed from said award on the counterclaims only. A motion by defendant-respondent New Opera to dismiss, for asserted nonfinality, so much of the appeal as relates to the judgment on its counterclaims is being denied herewith (see 298 N. Y. 616).

Shortly stated, the contentions, in this court, of appellants (plaintiff and defendant Brown) are these: first, that Savage, Brown's predecessor, never obtained a valid statutory copyright because he did not comply with the Federal copyright statute as of 1907, and that accordingly Brown, as Savage's successor, retains to this day Savage's common-law rights; second, that the statutory copyright purportedly issued to Savage in 1907, was invalid because, according to appellant, Savage was not authorized to apply for copyright under his own limited grant of rights from one Edwardes, proprietor of the operetta, for which reason again, say appellants, the common-law rights of Savage and his successors continued and continue to exist; third, that defendant New Opera Company, as a licensee from plaintiff and the latter's principal Brown, is estopped from questioning its licensors' interest and title; and, fourth, that defendant New Opera Company cannot question the rights of plaintiff and Brown because New Opera failed, on discovering the facts as to expiration of the Savage statutory copyright, to serve

definite notice that it (New Opera) was completely repudiating the license agreement. Appellants thus find themselves in the position, unusual for licensors, of asserting that their predecessor's statutory copyright was entirely invalid, this of course so that they can fall back on that predecessor's common-law rights.

The really material facts are few. The operetta was composed in Vienna in 1905, in the German language, and the composers soon afterwards conveyed all their rights to certain citizens of Germany. The latter thereupon assigned their rights, or some of them, as to the English-speaking countries, to George Edwardes, who was a London theatrical producer, and friend and frequent business associate of Savage. Edwardes had the work translated into English and then, by written agreements set out in this record, assigned all the production and performing rights for the United States and Canada to Savage, a prominent American producer of musical comedies, etc. Savage's presentation of The Merry Widow in New York and elsewhere in the United States, beginning in 1907, was a success. Before the show opened, Savage had, earlier in 1907, applied to the United States Copyright Office for a statutory copyright, describing himself as " proprietor ". It is undisputed that two copies of the book and score were deposited by him in the Library of Congress, as required by the statute, and that under date of May 24, 1907, the copyright office issued to him a formal certificate of copyright. Savage continued for many years to act publicly in every respect as the copyright owner of this work, bringing several infringement suits against others, and (in 1908) copyrighting a novel or serial story of " The Merry Widow ". The Savage copyright expired at the end of its statutory term in 1935, and no attempt was made to revive it. At Savage's death in 1927, defendant Brown had succeeded to his rights, and plaintiff was, from 1926 on, the authorized agent of Savage, and later of Brown, for the " leasing " of The Merry Widow. The time came when defendant New Opera Company, desiring to stage a revival of The Merry Widow, made with plaintiff the two agreements hereinabove referred to, with the sequelæ above described.

We now take up, as against those facts, appellants' law points, each of which was overruled by the trial court (and presumably by the Appellate Division). As to whether or not Savage had any express authority from Edwardes to take out an American

copyright, there is no direct evidence, one way or the other, but Savage certainly acted openly in the matter and there is not the slightest suggestion that his activities were in antagonism to any rights of Edwardes. Apparently, authority to apply for a statutory copyright is quite readily implied from such facts (*Mifflin* v. *R. H. White Co.*, 190 U. S. 260, and cases cited). Even mere possession of the manuscript is some evidence of the right to apply for copyright (*Gerlach-Barklow Co.* v. *Morris & Bendien, Inc.*, 23 F. 2d 158, 161). Savage did procure the issuance to himself of an official certificate of copyright which again is some proof that he actually got a valid copyright (see *Chautauqua School* v. *National School*, 211 F. 1014; *M. Witmark & Sons* v. *Calloway*, 22 F. 2d 412; Ball on the Law of Copyright and Literary Property, p. 601). With all this proof of public and long-continued activity by Savage in the role of proprietor, and with no contrary proof offered by appellants, presumptions are very strong in favor of Savage's right to copyright, and of his actual ownership of the American copyright (*Belford* v. *Scribner*, 144 U. S. 488, 504; *Eyre* v. *Higbee*, 35 Barb. 502, 509–511; *O'Neill* v. *General Film Co.*, 171 App. Div. 854). In this connection, we state that we are not grounding our conclusion as to Savage's rights on the stipulation made in the course of the trial by all parties, which included this language: " that Henry W. Savage had all of the rights that George Edwardes had in and to the operetta The Merry Widow." Taken literally, that would dispose of all question of Savage's authority to copyright, but since there is some doubt as to the precise import of that language as used at the particular juncture in the trial, we do not hold appellants to its face meaning.

Next, appellants assert that Savage never got a valid statutory copyright because he failed, they say, to " publish " the work as required by the copyright laws. There is a convincing line of authority that the formal deposit by the alleged proprietor of copies of the work, which deposit is here undisputed, plus the later public performance of the play, satisfied all the requirements of the Federal statute as of 1907 (*Stern* v. *Jerome H. Remick & Co.*, 175 F. 282; *Cardinal Film Corp.* v. *Beck*, 248 F. 368; *Atlantic Monthly Co.* v. *Post Pub. Co.*, 27 F. 2d 556, 557, 558; *Patterson* v. *Century Productions, Inc.*, 93 F. 2d 489, 492; *Jewelers' Mercantile Agency* v. *Jewelers' Pub. Co.*, 155 N. Y. 241, 251; Amdur on Copyright Law and Practice, § 20). A Federal district court in Massachusetts has so held as to this very

copyright, and as against this same appellant Brown (*Brown* v. *Select Theatres Corp.*, 56 F. Supp. 438, 440).

Savage, having thus gotten a valid statutory copyright, by that same act gave up and lost forever all his common-law rights to The Merry Widow (*Caliga* v. *Inter Ocean Newspaper Co.*, 215 U. S. 182, 188; *Cohan* v. *Robbins Music Corp.*, 244 App. Div. 697, 698; Ball on the Law of Copyright and Literary Property, p. 48). "No proposition is better settled than that a statutory copyright operates to divest a party of the common-law right", said this court in *Jewelers' Mercantile Agency* v. *Jewelers' Pub. Co.* (*supra,* 155 N. Y. at p. 247); (Judge LEARNED HAND in *RCA Mfg. Co.* v. *Whiteman*, 114 F. 2d 86, 89, called *Jewelers' Mercantile Agency* v. *Jewelers' Pub. Co.* "the leading case"). And it is settled, too, that when Savage's copyright expired by statute in 1935, and was not renewed, his common-law rights were not revived; The Merry Widow passed, finally, completely and forever into the public domain and became freely available to the unrestricted use of anyone (*Atlas Mfg. Co.* v. *Street & Smith*, 204 F. 398, 403, appeal dismissed *sub nom. Street & Smith* v. *Atlas Mfg. Co.*, 231 U. S. 348; *G. & C. Merriam Co.* v. *Syndicate Pub. Co.*, 207 F. 515, appeal dismissed 237 U. S. 618; *Underhill* v. *Schenck*, 238 N. Y. 7, 20, 21; see *Scott Paper Co.* v. *Marcalus Mfg. Co.*, 326 U. S. 249, 256). There was thus no basis whatever for plaintiff's warranty to New Opera that plaintiff's principal was the sole owner of the performing rights of The Merry Widow. Clearly, defendant New Opera's pleas of breach of warranty and total failure of consideration were established, and by undisputed proof.

The remaining question is as to whether New Opera, as a licensee, was estopped from denying the validity or existence of its licensor's pretended rights. The traditional law of estoppel as to licensees of allegedly copyrighted material is substantially the same as applies to a licensee under patents (see *Saltus* v. *Belford Co.*, 133 N. Y. 499, 502, 503). It is well illustrated by the two opinions of this court in *Marston* v. *Sweet,* found at 66 New York 206 and 82 New York 526, where it was held, in substance, that a licensee under an apparently valid patent (or copyright) was estopped from asserting the later-discovered invalidity of the patent (or copyright). But there never was any reason why the old estoppel rule (or the corollary rule requiring a licensee definitely to renounce his license before defending against the

licensor), should apply as to *expired* patents or copyrights, and nothing to show that it even was so applied either in the Federal courts or our State courts (see Amdur on Copyright Law and Practice, p. 829; *Dueber Watch-Case Mfg. Co.* v. *Robbins,* 75 F. 17, 26; *Stimpson Computing Scale Co.* v. *W. F. Stimpson Co.,* 104 F. 893, 895; *Demco, Inc.,* v. *Doughnut Mach. Corp.,* 62 F. 2d 23, 26, certiorari denied 288 U. S. 605). Since the only office of the estoppel was to give an added protective right to the holder of a statutory monopoly, when the monopoly expired by the statute which created it, there was no further use for the protection. And, whatever was the law, in other days and under earlier decisions, as to the coverage of such an estoppel, it is no longer the law, it seems, that a licensee, by taking out and acting under a license, is estopped from denying that his licensor's monopoly has expired. *Scott Paper Co.* v. *Marcalus Mfg. Co.* (326 U. S. 249, 256, 257–258, *supra,* not strictly applicable here because it dealt with alleged estoppel as against an assignor) says that the enforcement of estoppel after expiration " is inconsistent with the patent laws which dedicate to public use the invention of an expired patent ", and that, after expiration, " the rights in the invention are then no longer subject to private barter, sale, or waiver ". Two later cases: *Katzinger Co.* v. *Chicago Mfg. Co.* (329 U. S. 394) and *MacGregor* v. *Westinghouse Co.* (329 U. S. 402) have, in ultimate effect, put an end to the doctrine that a licensee cannot ordinarily challenge the validity of a patent, although everyone else may. The result of these recent Supreme Court decisions seems to be no less than this: that, except under special circumstances, a licensee of a patent (and, presumably of a copyright) is not estopped from questioning the validity or the existence of his licensor's patent or copyright.

If it be argued that this question of estoppel is one of contract under our State laws, rather than of special Federal copyright law, then so much the worse for appellants. Looking at the case as a problem in contract law, we have appellants expressly warranting that they are the sole owners of the right to produce the opus, then payment by respondent, then discovery by respondent that it got nothing for its money, since appellants had no rights at all and the operetta belonged to the public. A clearer case of total breach of warranty and total failure of consideration could hardly be imagined.

The judgment should be affirmed, with costs.

174

THACHER, J. (dissenting). The license agreements in this case purported to grant performance rights to the defendant for which it agreed to pay royalties. For some time these royalties were paid, but, having learned of the ruling in *Brown* v. *Select Theatres Corp.* (56 F. Supp. 438) the licensee withheld payment of future royalties and demanded repayment of royalties previously paid. Withholding payment of royalties and deposit of the royalties withheld in a special account, pending determination of the licensor's rights in " The Merry Widow ", cannot be taken as a renunciation of the license agreement. The licensee clearly intended to retain whatever protection the license gave it and declared its intention that no one's rights should be prejudiced. To this end the unpaid royalties were deposited and earmarked in a special account. Not having repudiated the license agreement, the defendant licensee continued to produce the play, and two questions are presented upon this record: (1) is the licensee liable for royalties as they accrue, and (2) may the licensee recover past royalties paid by him?

Having agreed to pay royalties for a license to produce the play, the licensee remained liable unless and until it renounced the license and the right to rely upon it if sued for infringement. (*Saltus* v. *Belford Co.*, 133 N. Y. 499; *Marston* v. *Swett*, 66 N. Y. 206, cf. same case, 82 N. Y. 526; *Hyatt* v. *Dale Tile Mfg. Co.*, 106 N. Y. 651, affd. *sub nom. Dale Tile Mfg. Co.* v. *Hyatt*, 125 U. S. 46, opinion in Court of Appeals by PECKHAM, J., reported in footnote, 125 U. S. 46, 49; *Hyatt* v. *Ingalls*, 124 N. Y. 93; *Outcault* v. *Bonheur*, 120 App. Div. 168; *Drackett Chemical Co.* v. *Chamberlain Co.*, 63 F. 2d 853.)

Although it is often said that the licensee is estopped to deny the licensor's title, the question involved is not one of copyright but simply of contract, as we held in *Saltus* v. *Belford Co.* (*supra*).

I find no evidence in the record to support any claim of fraudulent misrepresentation by the licensor which would vitiate the agreement, and in this connection it is to be noted that the licensee has neither repudiated the agreement nor returned or offered to return the dramatic scripts, musical scores and other material relating to the dramatic production of " The Merry

Widow " delivered pursuant to the contract. *Outcault* v. *Bonheur* (*supra*) is authority for requiring payment of royalties under such circumstances.

The question being one of contract law, recent decisions of the Supreme Court of the United States dealing with patents used in aid of monopoly, such as *Katzinger Co.* v. *Chicago Mfg. Co.* (329 U. S. 394) and *MacGregor* v. *Westinghouse Co.* (329 U. S. 402) are not controlling.

Nor is *Scott Paper Co.* v. *Marcalus Mfg. Co.* (326 U. S. 249, 254) in point on that question. In that case it was held that the patent laws requiring dedication of the invention to the public upon the expiration of the patent precluded the invocation of the doctrine of estoppel. Quite obviously, when a patent expires, licenses under the patent necessarily expire with it. Perhaps, if in this case the license had been grounded upon a statutory copyright, that might also be the effect of the expiration of the statutory copyright. But the subject matter of the license agreements in this case was the sole right to produce the operetta in the United States and Canada and there was neither reference to the statutory copyright or its expiration nor proof that the licensee or the licensor had knowledge thereof.

The licensee was bound to perform the terms of the license agreement at least until it did renounce the licensor's right to require a license to produce " The Merry Widow ". Since no such renunciation was ever made, the licensee continued liable for the royalties as they accrued and was not entitled to recover royalties which had been paid. The rejection of a claim for patent royalties because of asserted invalidity of a patent without unequivocal renunciation of its protection does not relieve the licensee of the obligation to pay royalties (*Skinner* v. *Wood Mowing & Reaping Mach. Co.*, 140 N. Y. 217).

In my opinion the judgment of the Appellate Division should be reversed and the matter remitted to the Supreme Court with directions to enter judgment in favor of plaintiff in the sum of $8,888.25 on its complaint, and dismissing the counterclaims.

LOUGHRAN, Ch. J., LEWIS and FULD, JJ., concur with DESMOND, J.; THACHER, J., dissents in opinion in which CONWAY and DYE, JJ., concur.

Judgment affirmed.